UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Case No.: 8:14-cv-

$49,534.69, SEIZED FROM
PNC BANK, N.A., ACCOUNT NO.
12-1423-6785, IN THE NAME OF
THE BULLET HOLE, INC.

    Defendant.
_____/

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, through the undersigned Assistant United States Attorney, brings this complaint and alleges upon information and belief, in accordance with Supp'l Rule G(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

## NATURE OF THE ACTION

1.    This is a civil action *in rem*, to forfeit to the United States of America $49,534.69 seized from PNC Bank, N.A., Account No. 12-1423-6785, in the name of The Bullet Hole, Inc., hereinafter the "Defendant Funds," in accordance with 31 U.S.C. § 5317(c)(2), which authorizes the forfeiture of any property involved in or traceable to a violation of 31 U.S.C. § 5324, or any conspiracy to violate section 5324.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to:

   a. 28 U.S.C. § 1355(b)(1)(A), because pertinent acts or omissions giving rise to the forfeiture occurred within the Middle District of Florida; and

   b. 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1355(b)(1), because the acts giving rise to the forfeiture of the defendant funds occurred in this district.

## THE DEFENDANT *IN REM*

5. The Defendant Funds were seized pursuant to a seizure warrant issued by this Court on November 21, 2013, Case No. 8:13-MJ-1789TGW. The Defendant Funds are in the government's possession, custody, and control.

6. As set forth in Supp'l Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.[1]

---

[1] In this regard, however, Supp'l Rule G is inconsistent with the current Middle District of Florida Local Admiralty Rule 7.03(b)(1), which requires a

**BASIS FOR FORFEITURE**

7. The Defendant Funds are subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2), which provides that "any property involved in a violation of [31 U.S.C. § 5324], or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States . . .".

**CURRENCY TRANSACTION REPORTS AND STRUCTURING**

8. The Bank Secrecy Act and its implementing regulations require domestic financial institutions and banks (with specific exceptions) to file currency-transaction reports (Form 4789) with the Government. *See* 31 U.S.C. § 5313; 31 C.F.R. Part X. The currency-transaction reports must list all deposits, withdrawals, transfers, or payments involving more than $10,000 in cash or currency. These regulations also require that multiple transactions be treated as a single transaction if the financial institution has knowledge that they are conducted by, or on behalf of, the same person, and they result in either currency received or disbursed by the financial institution totaling more than $10,000 during any one business day.

9. Currency-transaction reports (CTRs) are often used by law enforcement to uncover a variety of illegal activities including narcotics trafficking offenses. Many individuals involved in these illegal activities are aware of the reporting requirements and take steps to cause financial institutions to fail to file

---

judicial officer to first review the verified complaint, and any other case papers, prior to the Clerk issuing the warrant of arrest and/or summons *in rem*.

CTRs. These steps are often referred to as "structuring." To "structure" a transaction means to deposit, withdraw, or otherwise participate in transferring a total of more than $10,000 in cash or currency using a financial institution or bank by intentionally setting up or arranging a series of separate transactions, each one involving less than $10,000, in order to evade the currency-reporting requirement that would have applied if fewer transactions had been made. Structuring often involves making multiple cash deposits, in amounts less than $10,000 to multiple banks and/or branches of the same bank on the same day, consecutive days, or within a few days of each other. Structuring is prohibited by 31 U.S.C. § 5324, which makes it a Federal crime under certain circumstances for anyone to knowingly evade a currency-transaction reporting requirement.[2]

10. In order to establish the crime of structuring transactions to evade reporting requirements, the government must prove that, for the purpose of evading the transaction reporting requirements, the subject knowingly structured or helped structure a currency transaction, with one or more domestic financial institutions.

---

[2] 31 U.S.C. § 5324 states in relevant part that "no person shall, for the purpose of evading the reporting requirements . . . cause or attempt to cause a domestic financial institution to fail to file a [CTR] . . . or . . . structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions."

## **FACTS**

11. Specific details of the facts and circumstances supporting the forfeiture of the Defendant Funds are provided by Bureau of Alcohol Tobacco Firearms and Explosives Special Agent Thomas E. Pietrowicz who states:

12. The Bullet Hole, Inc. is a licensed firearms dealer that specializes in gun repair, custom guns, and safes in Sarasota, Florida.

13. According to its website, http://www.bulletholeonline.com/ (last checked on December 26, 2013), The Bullet Hole accepts all major credit cards[3], checks, and money orders.

14. PNC Bank account 12-1423-6785 was opened in November 2008 (at the time the financial institution was RBC bank, but it was later sold to PNC Bank).

15. The signatories at the time the account was opened were Francis M. Misantone and Barbara B. Misantone, who are also corporate officers of The Bullet Hole, Inc.

16. In October 2010, Brooke F. Misantone was added as a signatory on the account. He is currently listed as a corporate officer of The Bullet Hole, Inc.

17. Between April 19, 2013 and August 30, 2013, the Bullet Hole account received 43 separate cash deposits totaling $297,640.00. Many of these deposits occurred on consecutive days and, when combined, exceeded $10,000.

---

[3] Visa, Master Card, American Express, and Discover Card.

18. Specifically, the following cash deposits were made between April 19, 2013 and August 30, 2013:

| Week of April 15-21 | | Total Deposits | Cash Deposits |
|---|---|---|---|
| Fri | 4/19/2013 | $11,510.06 | $ 9,000.00 |
| | | Weekly Total | $ 9,000.00 |
| **Week of April 22-28** | | | |
| Mon | 4/22/2013 | $ 9,100.00 | $ 9,100.00 |
| Tues | 4/23/2013 | $ 9,040.00 | $ 9,000.00 |
| Wed | 4/24/2013 | $11,888.65 | $ 8,900.00 |
| Thurs | 4/25/2013 | $ 5,500.00 | $ 5,500.00 |
| Fri | 4/26/2013 | $ 3,074.74 | $ 3,000.00 |
| | | Weekly Total | $35,500.00 |
| **Week of April 29-May 5** | | | |
| Thurs | 5/2/2013 | $ 7,133.50 | $ 7,000.00 |
| Fri | 5/3/2013 | $ 4,420.25 | $ 3,800.00 |
| | | Weekly Total | $10,800.00 |
| **Week of May 6-12** | | | |
| Mon | 5/6/2013 | $ 5,338.66 | $ 4,100.00 |
| Thurs | 5/9/2013 | $ 5,759.58 | $ 3,350.00 |
| Fri | 5/10/2013 | $ 8,000.00 | $ 8,000.00 |
| | | Weekly Total | $15,450.00 |
| **Week of May 13-19** | | | |
| Tues | 5/14/2013 | $ 9,560.50 | $ 9,400.00 |
| Wed | 5/15/2013 | $ 9,585.17 | $ 7,000.00 |
| Thurs | 5/16/2013 | $ 7,600.00 | $ 7,400.00 |
| Fri | 5/17/2013 | $ 6,630.00 | $ 6,610.00 |
| | | Weekly Total | $30,410.00 |
| **Week of May 20-26** | | | |
| Mon | 5/20/2013 | $ 8,100.00 | $ 8,100.00 |
| Tues | 5/21/2013 | $ 8,555.00 | $ 8,280.00 |
| Wed | 5/22/2013 | $ 8,620.00 | $ 8,620.00 |
| Thurs | 5/23/2013 | $ 5,600.00 | $ 5,600.00 |
| Fri | 5/24/2013 | $ 2,000.00 | $ 2,000.00 |
| | | Weekly Total | $32,600.00 |
| **Week of May 27-June 2** | | | |
| Tues | 5/28/2013 | $ 9,837.68 | $ 9,700.00 |
| Wed | 5/29/2013 | $13,887.50 | $ 8,800.00 |
| Thurs | 5/30/2013 | $ 8,200.00 | $ 8,200.00 |
| Fri | 5/31/2013 | $ 8,700.00 | $ 8,450.00 |

|  |  |  | Weekly Total | $35,150.00 |
|---|---|---|---|---|
| **Week of June 3-9** | | | | |
| Mon | 6/3/2013 | $ 8,160.50 | $ 8,000.00 | |
| Wed | 6/5/2013 | $ 3,939.95 | $ 3,850.00 | |
| Thurs | 6/6/2013 | $ 7,920.00 | $ 7,800.00 | |
| Fri | 6/7/2013 | $ 4,482.58 | $ 3,000.00 | |
|  |  |  | Weekly Total | $22,650.00 |
| **Week of June 10-16** | | | | |
| Mon | 6/10/2013 | $ 9,521.00 | $ 9,500.00 | |
| Tues | 6/11/2013 | $11,019.74 | $ 9,600.00 | |
| Wed | 6/12/2013 | $ 4,700.00 | $ 3,250.00 | |
| Thurs | 6/13/2013 | $ 6,450.00 | $ 4,950.00 | |
| Fri | 6/14/2013 | $ 8,500.00 | $ 8,500.00 | |
|  |  |  | Weekly Total | $35,800.00 |
| **Week of June 17-23** | | | | |
| Tues | 6/18/2013 | $ 7,250.00 | $ 7,150.00 | |
| Wed | 6/19/2013 | $ 4,877.50 | $ 4,350.00 | |
| Thurs | 6/20/2013 | $ 9,951.60 | $ 8,900.00 | |
| Fri | 6/21/2013 | $ 8,394.90 | $ 3,500.00 | |
|  |  |  | Weekly Total | $23,900.00 |
| **Week of July 8-14** | | | | |
| Mon | 7/8/2013 | $ 9,207.09 | $ 8,400.00 | |
| Wed | 7/10/2013 | $ 9,728.00 | $ 9,130.00 | |
| Friday | 7/12/2013 | $ 9,550.00 | $ 9,550.00 | |
|  |  |  | Weekly Total | $27,080.00 |
| **Week of July 29-Aug 4** | | | | |
| Tues | 7/30/2013 | $ 5,430.37 | $ 4,900.00 | |
| Wed | 7/31/2013 | $ 9,000.00 | $ 9,000.00 | |
| Fri | 8/2/2013 | $12,190.30 | $ 5,400.00 | |
|  |  |  | Weekly Total | $19,300.00 |

19.     From February 1, 2013 through April 18, 2013, there were no cash deposits into the account.

20.     The owners of The Bullet Hole were making multiple cash deposits in amounts under $10,000.01 to avoid triggering the filing of CTRs.  In short, they were structuring.

21. On November 25, 2013, Bureau of Alcohol Tobacco Firearms and Explosives Special Agent Edward.F.Winkelspecht.III interviewed Francis M. Misantone and Barbara B. Misantone regarding the deposits structured into The Bullet Hole account. Barbara B. Misantone stated that she intentionally did not make deposits of over $10,000 because she "didn't want to do the paperwork." She also claimed that bank employees told her that if she deposited over $10,000, the bank would have to "report it to the Feds."

22. The Defendant Funds are the funds that were involved in the structuring described above.

## **CONCLUSION**

23. As required by Supp'l Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, for the reasons set forth above, probable cause exists to believe that the Defendant Funds constitute property involved in a violation of 31 U.S.C. § 5324, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy. Thus, the Defendant Funds are subject to forfeiture to the United States pursuant to 31 U.S.C. § 5317(c)(2).

WHEREFORE, pursuant to Supp'l Rule G, Plaintiff United States of America respectfully requests that process of forfeiture be issued against the Defendant Funds; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that the Defendant Funds

be forfeited to the United States for disposition according to law; and that the United States have such other and further relief as this case may require.

Dated: January 7, 2014

Respectfully Submitted,

A. LEE BENTLEY, III
Acting United States Attorney

By: /s/ James A. Muench

JAMES A. MUENCH
Assistant United States Attorney
Florida Bar Number 472867
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
(813) 274-6000 – telephone
(813) 274-6220 – facsimile
E-mail: james.muench2@usdoj.gov

## VERIFICATION

I, Thomas E. Pietrowicz, hereby verify and declare under penalty of perjury, that I am a Special Agent with the Bureau of Alcohol Tobacco Firearms and Explosives and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of January, 2014.

_____
Special Agent Thomas E. Pietrowicz